**Lewis Walter REDD, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 69–C–3–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

July 18, 1969.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

### OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Lewis Walter Redd, a state prisoner, pursuant to 28 U.S.C.A.

§ 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was transferred to this court by order dated January 7, 1969.

Petitioner is being detained in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Pulaski County of November 24, 1964, wherein petitioner was convicted for the crime of murder and sentenced to fifteen years confinement. The conviction resulted after a trial by jury, in which the petitioner was represented by court appointed counsel and in which he entered a plea of not guilty. On November 28, 1964, the petitioner, represented by court appointed counsel, entered a plea of guilty to a charge of felonious assault, was tried, convicted and sentenced to a term of ten years by the Circuit Court of Pulaski County. The ten year sentence was to run consecutively to the prior fifteen years received on the conviction for murder.

On February 9, 1967, a plenary hearing was held in the Circuit Court of Pulaski County as a result of a petition for a writ of habeas corpus filed in the state courts by the petitioner. By order dated February 28, 1967, accompanied by a memorandum opinion, the Circuit Court denied the writ and dismissed the petition. An appeal to the Virginia Supreme Court of Appeals resulted in a denial of a writ of error thereby affirming the lower court's decision.

The plenary hearing in the state court was limited to the conviction of November 24, 1964, since the state law, at that time, allowed an attack only on present detention convictions and not upon convictions that imposed sentences in the future. The sole point raised by the petitioner at the state habeas corpus hearing was that a confession used in evidence at his trial was involuntary and should have been excluded.

On June 3, 1968, the petitioner filed a petition for a writ of habeas corpus in this court attacking the felonious assault conviction of November 28, 1964, of the Circuit Court of Pulaski County. The grounds alleged in the petition were that the petitioner was denied the effective assistance of counsel in that counsel advised him to plead guilty and also did not object to the introduction of an involuntary confession. By order filed on July 17, 1968, this court denied the writ and dismissed the petition for failure to exhaust state remedies in view of § 8–596 of the Virginia Code Ann., as amended, effective June 28, 1968, which provided state court remedies for the review of prison sentences not yet being served and also in view of the principle of comity between federal and state courts.

It is not clear whether the present petition before this court attacks the conviction of November 24, 1964, or of November 28, 1964, or both. The petitioner states that he complains of a sentence imposed on November 24, 1964, in the Circuit Court of Pulaski County on the charge of murder and felonious assault, after a plea of not guilty and trial by a jury and a sentence of twenty-five years. The petitioner makes no attempt to separate the trial of November 24, 1964, where he was tried by a jury after entering a plea of not guilty and the trial of November 28, 1964, where he was tried by the court. The former trial resulted in a sentence of fifteen years confinement and the latter in a sentence of ten years. The petitioner has, in effect, combined and confused his trials and the circumstances surrounding them.

This court will treat the present petition as an attack upon the conviction of November 24, 1964, and will address the question concerning the alleged involuntary confession. This court will not consider the attack upon the conviction of November 28, 1964, since it is apparent that the petitioner has not presented his claims to the state courts in accordance with this court's order of July 17, 1968. Nor will this court consider any substantive claim other than the one concerning the involuntary confession since this is the only claim that has been presented to the state courts, and adjudicated and thus is the only claim properly before this court in compliance with 28 U.S.C.A.

§ 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The records before this court contain a complete transcript of the testimony of the petitioner's trial on November 23 and 24, 1964. The following appears from an examination of the transcript. The petitioner was taken into custody on a charge of assaulting one Roscoe Price on February 18, 1964. While in custody, the petitioner came under suspicion concerning the disappearance of one James Dalton because of blood discovered in a truck owned by Dalton which the petitioner had recently been seen operating. At the trial, a hearing was held outside the presence of the jury to determine whether a statement signed by the petitioner concerning the Dalton case was admissible into evidence. Harry J. Hughes, Jr., Deputy Sheriff of Pulaski County, testified at this hearing that the petitioner was questioned concerning the Dalton case on three different occasions, these occasions being for an hour on February 18, for about one and one half hour on February 19, and for approximately two and one half hours on February 21, 1964. Hughes testified that the petitioner was duly advised of his constitutional rights each time he was questioned. Specifically Hughes testified that the petitioner was advised that he did not have to make a statement, that anything he said could be used for or. against him in a court of law and that he had a right to counsel. Hughes testified that no inducements or promises or threats were made to the petitioner. According to Hughes, the petitioner and his brother, who was also in custody, agreed to take a polygraph test. This required a trip to a patrol station in Wytheville which occurred on February 21, 1964. The petitioner's brother underwent the test, but the petitioner, upon further questioning, confessed and the test was never administered to him. Hughes testified that the petitioner and his brother had both agreed to take the test and had known that the trip to Wytheville was for that purpose. The trip to Wytheville consumed most of the day and Hughes testified that for food "I think we all had 'Nabs' and Coca Colas." The statement admitting the slaying of James Dalton and the disposal of the body was reduced to writing when the petitioner returned to the Sheriff's office in Pulaski. Corrections were made in the confession and the petitioner initialed the corrections. On this basis the Circuit Court Judge held that the confession was voluntary, not in violation of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and thus admissible into evidence.

O. C. Pollard, an investigator for the Virginia State Police, was present and participated in the interrogation of the petitioner on two occasions, once at the Sheriff's office in Pulaski and once at Wytheville. Pollard testified that the petitioner was advised that he did not have to make a statement, that anything he said could be used for or against him and that he had a right to counsel. Pollard testified that no threats, promises or inducements were used to obtain the confession. The investigator stated that on each occasion he identified himself as being a member of the state police and that the questioning lasted an hour and one half on the first occasion and approximately two and one half hours on the second occasion.

Sheriff Henry Hall testified, concerning the confession, that before the petitioner's statement was reduced to writing, he was advised that he didn't have to make a statement, that anything he said could be used against him and that he had a right to counsel if he wanted one. The Sheriff further testified that no threats or promises were made to the petitioner.

At the state habeas corpus hearing the petitioner testified that he had never been advised of his rights at any time. According to the petitioner, his mother was attempting to secure the services of an attorney, but these efforts failed because of financial difficulties. The petitioner testified that he mentioned his lawyer's name to Deputy Hughes. Depu-

ty Hughes recalled that petitioner did mention his lawyer, but there is no evidence that anyone denied petitioner the right to consult with his attorney. The petitioner confirmed that no one abused him physically, but he denied that he ever agreed to a polygraph test and testified that he did not know where the authorities were taking him when they left for Wytheville. Instead the petitioner testified that the deputy that transported them to Wytheville, Deputy Connor, said, "We are going to take you somewhere to keep from somebody killing you." The petitioner testified that his brother was questioned first at Wytheville and that upon being confronted with a statement by his brother that implicated him in the murder of James Dalton, plus a word from O. C. Pollard to the effect that he would "talk to the judge", he confessed. In addition the petitioner stated that he was not allowed to use the phone in the Sheriff's office.

Stanley Redd, petitioner's brother, testified at the state habeas corpus hearing. Stanley stated that he was unaware that he was being taken to Wytheville for a polygraph test and that upon learning they were being moved, Deputy Connor had stated, "We're taking you out of town to keep both of you from getting killed." Stanley denied having agreed to a polygraph test and said that the interrogating officers told him that if "I'd tell all I know about that they'd see I got off." According to the testimony Stanley Redd took the polygraph test and later made a statement that incriminated his brother, the petitioner. Stanley testified that he did not talk to the petitioner after making the statement and that he did not know whether the petitioner was advised of his rights because he was not present when his brother was questioned. However Stanley did say that he himself was never advised of his rights about remaining silent, that anything he said could be used against him, or that he had a right to counsel.

Mr. James Richard Redd, another brother of the petitioner, testified at the state habeas corpus hearing. He stated that he and his mother went to see the petitioner a day or two after he was locked in the jail about getting a lawyer. After leaving the jail James said that he drove his mother to Wytheville to hire a lawyer but because of financial difficulties it was impossible. James did not notify his brother that the trip had been a failure and he did not know whether his mother did or did not.

Mrs. Sarah Redd, the petitioner's mother, who was sixty nine years of age, testified at the state hearing to the effect that she traveled to Pearisburg and Wytheville in an effort to secure legal counsel, but that she had no money to pay a lawyer. Her testimony is to the effect that it was two or three weeks before she saw the petitioner after he was arrested, which is at variance with the other testimony in general.

Mrs. Sarah Kathryn Redd, the petitioner's wife, testified that she accompanied her mother-in-law to Pearisburg and Wytheville to hire a lawyer. She did not remember whether the trip to secure a lawyer was before or after she had been to visit the petitioner in jail. She said that she was not allowed to see her husband on the first visit to the jail because it was not visiting day. Upon returning the next week she saw her husband. The petitioner's wife testified that she had received a phone call from one of the jailers telling her that her husband was in jail.

Buford Redd, petitioner's brother testified that he gave his mother twenty dollars to be used toward securing a lawyer for his brother, the petitioner. He also stated that he was not allowed to see his brother at the jail except on visiting days.

W. P. Parsons and R. William Arthur, the attorneys appointed by the court to represent the petitioner at his trial testified at the state hearing. Mr. Arthur stated that the petitioner did not complain that his confession was coerced or the result of threats. The notes kept by Mr. Arthur indicate that Officer Pollard told the petitioner that if he confessed he, Pollard, would put in a good word

with the court, although the attorney had no independent recollection that the petitioner had told him this. W. P. Parsons testified that he recieved no complaints from the petitioner concerning the confession. Mr. Parsons further testified that objection was made to the confession at trial on the grounds that it was not voluntary, although it was his opinion that the statement being introduced into evidence actually benefited the petitioner.

Other persons to testify at the state habeas corpus hearing were Harry J. Hughes, Oscar Crump Pollard, J. Henry Hall, all of whom testified substantially to the same effect that they did at the petitioner's original trial concerning the confession. Frank Connor, the officer who transported the petitioner and his brother to Wytheville testified that he told them that they were going to take a polygraph test. Connor absolutely denied that he told the prisoners that he was taking them out of town for safekeeping, even in a joking manner, although he did not recall telling them that they were going to Wytheville. After transporting the prisoners, Connor immediately returned to Pulaski.

Mr. Arthur David Owens, one of the jailers for Pulaski County testified at the hearing. He testified that he did not recall whether the petitioner had requested the use of a telephone, but that the policy was to permit as many phone calls as necessary. He did not recall refusing either the petitioner's brother or wife the opportunity to see the petitioner the first time they appeared, but testified that visiting privileges are strictly enforced as much as possible. He admitted that he had discretion to let persons see the prisoners and he stated that arrangements could be made to see prisoners on other than visiting days, as for example if the visitors lived out of town and had made a long trip.

The court must determine from the facts presented whether the confession was voluntary. It should be noted that the case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not apply. In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966), it was held that the *Miranda* guidelines are available only to individuals whose trials begin after June 13, 1966. Petitioner's trial was held in November, 1964.

■ A confession is voluntary only when there is an effective waiver of the accused's constitutional right to remain silent. In determining waiver the court considers age, intelligence, education, and background. Also considered is the atmosphere in which the individual was placed, the demeanor of the interrogation, presence of any physical force, threats, psychological coercion, trickery, promises, inducements, lengthy interrogation, and incommunicado detention.

The petitioner is a man in his early thirties who has a grade school education. This being an *in forma pauperis* proceeding, the petitioner is apparently in the lower income bracket. Because of the petitioner's limited education and indigent background, the court must be satisfied that none of the other factors which tend to prove the confession was involuntary are present. The police questioned the petitioner only three times and none of these examinations lasted more than two and one half hours. He was advised of his rights each time. No physical force was used and none threatened. The court believes from the record that no psychological coercion, trickery, promises, or inducements are shown. Finally, the court finds no incommunicado detention. A phone was available to the petitioner had he requested its use to call his family or an attorney. The petitioner's family was not denied access to him on the regular visiting days.

The petitioner claims they were not asked if they wanted to take the lie detector test. Those in charge of the petitioner testified that they asked if he and his brother would take the test and that they consented. The court accepts as true the testimony of the police officers rather than that of the petitioner in regard to matter.

The court further finds that the confession was not involuntary because of the lack of counsel at the time the confession was made. In Escobedo v. Illinois, 378 U.S. 478, 491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977, 986 (1964), it was held that if a suspect in police custody has "requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." The petitioner as shown by the record here had been warned of his rights and had not been denied an opportunity to consult with an attorney.

In view of the attendant circumstances, the court finds that petitioner's statement was given voluntarily and intelligently and without compulsion or inducement of any kind.

It is, therefore, adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

The clerk is directed to certify copies of this opinion and judgment to the petitioner and to the respondent.